IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

DENNIS CRAIG RICE,

                Plaintiff,         Case No. 3:06 CV 1774

   -vs-

                                    MEMORANDUM OPINION

RANDALL BEARINGS, INC., et al.,

                Defendant.

KATZ, J.

**I. Motions pending**

This matter is before the Court on Plaintiff Dennis Craig Rice's ("Plaintiff") motion for enforcement of resolution (Doc. 75); Defendant Local No. 742 International Union of Electricians-Communication Workers of America's ("Union") motion for summary judgment (Doc. 88); and Defendant Randall Bearings, Inc.'s ("Randall Bearings" or "employer") motion for summary judgment (Doc. 91). This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**II. Background**

Randall Bearings operates a manufacturing plant in Lima, Ohio, where it produces bronze machined parts and a line of cast or sintered bronze bushings, pillow blocks, and other products. Randall Bearings employs approximately seventy-five employees, approximately fifty-five of whom are represented by the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, IUE-CWA-AFL-CIO and its Local 742 under a Collective Bargaining Agreement ("CBA"). Plaintiff Dennis Rice, who worked as a Class 1A Machinist at Randall

Bearings, is represented by the Union. Pursuant to the job descriptions set forth in the CBA, a Class 1A Machinist must be able to lift up to 50 pounds.

Plaintiff had suffered a work-related injury in 2001, and his doctor had prescribed the prescription pain medicine Vicodin and given him work restrictions of lifting up to 40 pounds and no bending more than 5-10%.

In December of 2003, Randall terminated Plaintiff on the basis of insubordination. The Union filed a grievance. An arbitrator determined that Plaintiff was insubordinate, and ordered Plaintiff returned to work but with a 30-day unpaid suspension. Plaintiff resumed work on March 4, 2005 as a Class 1A Machinist with the same pay as previously. While he had previously worked in pillow block, upon his return he was placed on a different task.

In trying to comply with the Arbitrator's first award, a dispute arose concerning whether back pay was owed to Plaintiff. A second arbitration was held, and the arbitrator ordered back pay to Plaintiff. The Union and Randall Bearings then held meetings to determine the amount of back pay due Plaintiff. Plaintiff met with both the Union and Randall Bearings. They reached a number that was higher than the employer's offer and included some overtime pay, vacation pay, reimbursement of insurance costs, and the difference between a regular day's pay and an overtime day's pay for the days Plaintiff received worker's compensation – a total of $32,095. Plaintiff rejected the award and herein demands an award of $66,294. The latter figure includes higher overtime pay for certain sketchily documented hours and does not include a deduction in the amount of the worker's compensation pay that Plaintiff actually received during the period in question.

Between his return to work on March 4, 2005 and August 29, 2006, Plaintiff filed at least eight grievances with the Union. The first was for being written up for producing too much scrap in violation of the plant scrap policy. The second was for being assigned outside the pillow block. The third for being refused permission by supervisors to work while taking Vicodin. The fourth was for being forced to use a stool rather than a chair. The fifth was that there was available work at the plant within Plaintiff's medical restrictions to which he was not assigned. The sixth was for failing to receive vacation pay for the period during which he received worker's compensation pay. The seventh grievance read that Plaintiff "wants his money that's coming to him." Pl. Dep., Ex. 27. The eighth was for being precluded from taking Vicodin while working. The Union processed each of these grievances to at least the second step of the grieveance process before either dropping them as moot or unsupportable (1, 2, 5, and 8) or settling them with the employer (3, 4, 6, and 7). Plaintiff argues that the Union's processing of several of these grievances constituted a breach of the Union's duty of fair representation.

**III. Standard of Review**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating

the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch*

*Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**IV. Discussion**

Plaintiff's claims include enforcement of an arbitration agreement; violation of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; disability discrimination in violation of state and federal law; and intentional interference with contract. For the reasons discussed herein, the Court finds that there is no genuine issue of material fact with regard to any of these claims, and Defendants are entitled to judgment as a matter of law.

**A. LMRA hybrid § 301 claim**

Section 301 of the LMRA provides that suits against labor organizations "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . , or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). A hybrid § 301 action consists of two claims: breach of the CBA by the employer and breach of the DFR by the union. To recover against either the employer or the union a plaintiff must show both. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573 (6th Cir. 1994).

A union breaches its DFR in the processing of a grievance if it acted by discrimination, in bad faith, or with extreme arbitrariness. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 585 (6th Cir. 1994). "[A] union's actions are arbitrary only if, in light of the factual and legal

5

landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' . . . as to be irrational." *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (citation omitted); *Black*, 15 F.3d at 584.

> The impact of the breach on the outcome must, moreover, have been substantial; to establish a breach of fair representation, the plaintiff must meet the onerous burden of proving that the grievance process was "seriously flawed by the union's breach of its duty to represent employees honestly and in good faith and without invidious discrimination or arbitrary conduct."

*Id.* at 585.

Plaintiff's claim fails because he cannot show that the Union breached its duty of fair representation. He alleges bad faith and argues unreasonableness in the Union's handling of his grievances. Plaintiff concedes that the first grievance has since become moot. Pl.'s Br., Doc. 94 at 6. The second grievance, for not returning to the pillow block, was dropped by the Union for lack of timely appeal by Plaintiff. Plaintiff argues, however, that by operation of plant custom he should have been returned to the pillow block. This complaint falls short of the standard required to show bad faith or arbitrariness. The third and eighth grievances related to Randall Bearings' precluding Plaintiff from taking Vicodin during work or after midnight the evening before a work day. It was dropped after consultation with treating physicians indicated that such a prohibition was medically reasonable. Plaintiff admitted that the policy, at least with regard to the third grievance, which was fashioned by Union-company negotiations, was a fair settlement. Pl. Dep. at 104-07; Pl. Dep. Ex. 28. There is no evidence to suggest that such action by the Union was in bad faith or arbitrary.

Plaintiff concedes that the fourth and sixth grievances have since been successfully settled. Doc. 94 at 6. The fifth grievance was that there was work within Plaintiff's restrictions during the

period in which he sought pay or return to work. However, Plaintiff insisted on being permitted to use Vicodin to accomplish such work. No doctor had approved Plaintiff's return to work, and at least one doctor recommended against a return to work under those conditions. The Union thus reasonably and in good faith considered the work to be beyond Plaintiff's restrictions and dropped the grievance.

Plaintiff's seventh grievance simply read, Plaintiff "wants his money that's coming to him." Pl. Dep., Ex. 27. The Union considered this grievance moot after it secured the arbitrator's second award of back pay for missed work time, and Plaintiff may even have agreed. Pl. Dep. at 192. The Union acted reasonably is making this determination and dropping the seventh grievance.

"Because this Court holds that the Union Defendants did not breach their duty of fair representation, Plaintiff's hybrid section 301 action fails as a matter of law, and hence it is unnecessary to determine whether Defendant [employer Randall Bearings] breached the CBA." *Devore v. Rolls-Royce Energy Systems, Inc. et al.*, 373 F.Supp.2d 750, 768 (S.D. Ohio 2005).

### B. Enforcement of arbitration

An employee may only challenge an arbitration award if "he alleges and proves that the union breached its duty of fair representation." *Bacashihua v. United States Postal Serv.*, 859 F.2d 402, 405-06 (6th Cir. 1988).

> Under [the section 301] body of law, it is well established that when a collective bargaining agreement establishes a mandatory grievance procedure and grants the union the exclusive right to pursue claims on behalf of an aggrieved employee, as in this case, the results obtained by the union are normally conclusive of the employee's rights under the agreement subject to very limited judicial review. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983). Accordingly, the aggrieved employee normally lacks independent standing to attack the results of the grievance process.

> [*Anderson v. Norfolk & Western Ry. Co.*, 773 F.2d 880, 882, (7th Cir. 1985)]; [*McNair v. United States Postal Service*, 768 F.2d 730, 735 (5th Cir. 1985)]; *Vosch v. Werner Continental, Inc.*, 734 F.2d 149, 154-55 (3d Cir.1984), *cert. denied*, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 779 (1985); *Andrus v. Convoy Co.*, 480 F.2d 604, 606 (9th Cir.), *cert. denied*, 414 U.S. 989, 94 S.Ct. 286, 38 L.Ed.2d 228 (1973). An individual employee may, however, challenge the arbitration award where he or she alleges and proves that the union breached its duty of fair representation, thereby subverting the arbitral process. *DelCostello*, 426 U.S. at 164-65, 103 S.Ct. 2290-91.

*Id. See also Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 131 (4th Cir 2002); *Cleveland v. Porca Co.*, 38 F.3d 289, 296-97 (7th Cir. 1994).

The Union did not breach its DFR in negotiating and securing Plaintiff's arbitration award. The arbitrations agreement in this case were reached by the employer and the Union, acting on behalf of Plaintiff as an employee and member. Plaintiff consented to these arbitrations and even participated in them. The arbitrator did not give a specific dollar amount award, but rather a framework for the parties to agree to an award somewhere between the award that each party originally contemplated. Such a resolution was reached, granting Plaintiff a reasonable award of $32,095 based on his demands and the negotiations between the Union and the employer, as discussed above. Plaintiff insists he is entitled to $66,294, but there is no legal or practical basis on which this Court could venture to grant such an award. Plaintiff sought reinstatement at the same rate of pay, vacation pay, insurance reimbursement, and other benefits, and the Union successfully secured most of his requests. The fact that he did not receive overlapping vacation pay for the period during which he received worker's compensation benefits or undocumented vacation pay by no means signals a breach of the duty of fair representation in light of the reinstatement and monetary award that the Union successfully secured.

The award is the province of arbitration and mutual agreement between the Union and the employer, and so long as a result is reasonable and the Union has not breached its duty of fair representation, it is entitled to deference. As discussed above, there are no genuine issues of material fact, and Plaintiff has not shown and cannot show that the Union breached its duty of fair representation. Therefore, Plaintiff lacks standing to challenge the arbitration award and the defendants are entitled to judgment as a matter of law.

### C. Disability discrimination

The federal Americans With Disabilities Act ("ADA") prohibits a covered employer from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to . . . the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).[1] A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Plaintiff is qualified if, and only if, he can perform the essential functions of the job in question. The Court must give some deference to the employer's judgment in

---

[1]

Federal law also prohibits discrimination by a union in its representation of an employee-member. To be successful under a Title VII claim based upon discrimination regarding a union's representation, a plaintiff must establish the following:
> (a) the employer committed a violation of the collective bargaining agreement; (b) the union permitted the violation to go unrepaired, thereby breaching its own duty of fair representation; and (3) the union was motivated by [discriminatory] animus. *See Bugg v. International Union of Allied Indus. Workers, Local 507 AFL-CIO*, 674 F.2d 595, 598 n. 8 (7 Cir.), *cert. denied*, 459 U.S. 805, 103 S.Ct. 29, 74 L.Ed.2d 43 (1982).

*Vargas v. Hill*, 152 F.Supp.2d 315, 318-319 (S.D.N.Y. 2001); *Patterson v. United Steelworkers of America, Local 9*, Case No. 3:04-cv-7019, 2005 WL 1539264 at *2 (N. D. Ohio June 30, 2005). Here, Plaintiff does not raise a discrimination claim against the Union.

determining what functions of a job are essential. *Id*. An employer cannot discriminate against a qualified employee with a disability by not making reasonable accommodations, which accommodations for that employee's known limitations do not impose an undue hardship on the operation of the employer's business. 42 U.S.C. § 12112(a) & (b)(5)(A).

In order to establish a *prima facie* case of disability discrimination in the employment context, a plaintiff must allege and prove (1) that he is an individual with a disability; (2) that he is otherwise qualified for the position he seeks or holds; and (3) that he was excluded from the position under circumstances that raise a reasonable inference of unlawful discrimination. *See Pesterfield v. Tennessee Valley Auth*., 941 F.2d 437, 441 (6th Cir. 1991) (citing *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S. Ct. 2361, 2367, 60 L. Ed. 2d 980 (1979)); *Ennis v. National Ass'n of Business & Educ. Radio., Inc*., 53 F.3d 55, 58 (4th Cir. 1995). When the plaintiff has established a *prima facie* case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). Once the employer meets its burden, the burden shifts back to the plaintiff to prove that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981); *see also Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir. 1996); *McDonald v. Union Camp Corp*., 898 F.2d 1155, 1160 (6th Cir. 1990).

To be "disabled" under the ADA, an individual must (1) have a physical or mental impairment which "substantially limits" him or her in at least one "major life activity," (2) have a record of such an impairment, or (3) be regarded by the employer as having such an impairment. 42 U.S.C. § 12102(2). "Major life activities" include "functions such as caring for oneself, performing

10

manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "Substantially limits" refers to being

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). Further,

> (3) With respect to the major life activity of working-
>
> (i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3). *Fricke v. E.I. Dupont Co.*, 219 Fed.Appx. 384, 389 (6th Cir. 2007).

It is also unlawful under Ohio law "[f]or any employer, because of the . . . disability . . . of any person . . . to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.02(A). The Ohio Supreme Court has held that the coverage of § 4112.02(A) is identical to the coverage of federal law prohibiting discrimination in the employment context. Thus, evidence sufficient to support a finding of discrimination under federal law is necessary before a violation of § 4112.02(A) can be shown. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 196, 421 N.E.2d 128, 131 (1981); *see also Little Forest Medical Ctr. of Akron v. Ohio Civil Rights Comm'n*, 61 Ohio St. 3d 607, 609-10, 575 N.E.2d 1164, 1167 (1991), *cert. denied*, 503 U.S. 906 112 S. Ct. 1263, 117 L. Ed. 2d 491 (1992); *El Grande Steak House v. Ohio Civil Rights Comm'n*, 99 Ohio App. 3d 557, 562, 651

N.E.2d 440, 444 (1994); *Twinsburg City Schools v. Ohio Civil Rights Comm'n*, 86 Ohio App. 3d 527, 529, 621 N.E.2d 591, 593 (1993). Accordingly, the Court will address Plaintiff's federal and state law claims together.

Plaintiff is not disabled. He has not shown that he is limited in any major life activities. He has not shown that he is unable to perform a class of jobs, but rather only complains about doing a single, particular job, the Occuma machine on which he was placed when he returned from his time off work. Neither has he shown that he was perceived as disabled. Nothing the company did is fairly interpreted as evidence that it regarded Plaintiff as having a disability. Asking for medical restrictions, which Randall Bearings did, does not constitute such evidence. *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 810-11 (6th Cir. 1999). Plaintiff cannot establish a case of disability discrimination, even if he were disabled, because he has not shown a set of facts that gives rise to a reasonable inference of unlawful discrimination. The Court need not go so far, however, because first and foremost, Plaintiff has not shown that he is disabled or that he was regarded as such.

### D. Intentional interference

In Ohio, the elements of tortious interference with contract were established in *Kenty v. Transamerica Premium Insurance Co.*, 72 Ohio St.3d 415, 650 N.E.2d 863 (1995). There, the Ohio Supreme Court adopted the Restatement of the Law 2d, Torts, Section 766 and held that, "in order to recover for a claim of intentional interference with a contract, one must prove:

(1) the existence of a contract,
(2) the wrongdoer's knowledge of the contract,
(3) the wrongdoer's intentional procurement of the contract's breach,
(4) lack of justification, and
(5) resulting damages."

12

*Id.* at 419, 650 N.E.2d at 866. "The issue in each case is whether the interference is improper or not under the circumstances." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 176, 707 N.E.2d 853, 858 (1999) (citing 4 Restatement of the Law 2d, Torts, at 28, Section 767, Comment b). "[E]stablishment of the fourth element of the tort of tortious interference with contract, lack of justification, requires proof that the defendant's interference with another's contract was improper." *Id.*

Plaintiff claims that Randall Bearings intentionally interfered with a contract between Plaintiff and his physician. However, Plaintiff makes no attempt to apply the law of intentional interference to the facts of this case in his pleadings on summary judgment. Pl.'s Br., Doc. 107 at 18 ("All arguments and facts in support of this argument are laid out in Plaintiff's Amended Complaint."). Like the pleadings, the complaint contains no evidence to support this claim. Amend. Complaint, Doc. 16 at 9. Without evidence, Plaintiff's claim cannot stand. FED. R. CIV. P. 56(e); *Leonard v. Robinson*, 477 F.3d 347, 353-54 (6th Cir. 2007) ("The party opposing summary judgment cannot rest on its pleading or allegations[;] to prevail, [it] must present material evidence in support of [its] allegations.") (citing *Celotex*, 477 U.S. at 324). Such a bare pleading by Plaintiff and Plaintiff's counsel leaves the defendants without guidance as to what sort of contractual interference is alleged. The Court treats this claim as if it were dropped by the Plaintiff and the same is hereby dismissed.

**V. Conclusion**

For the reasons stated herein, Plaintiff's motion for enforcement of resolution (Doc. 75) is hereby denied; Defendant Union's motion for summary judgment (Doc. 88) is hereby granted; and

13

Defendant Randall Bearings' motion for summary judgment (Doc. 91) is hereby granted. Case dismissed.

      IT IS SO ORDERED.

                                                              s/ *David A. Katz*
                                                              DAVID A. KATZ
                                                              U. S. DISTRICT JUDGE